**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Michael I. Tate,                                            Civil No. 15-3115 (WMW/JJK)

       Plaintiff,

v.

Minnesota Department of Corrections,
Correctional Facility Moose Lake, Warden          **REPORT AND**
Becky Dooley, Joe Unknown Correctional            **RECOMMENDATION**
Officer, Julie Nummela Correctional Officer,
Dr. William Scheidt, and Nurse Shantel
Erickson,

       Defendants.

Michael I. Tate, 168006, Mille Lacs County Jail, 640 3rd Street S.E., Milaca, MN 56353, Plaintiff, pro se.

Rachel E Bell, Esq., Minnesota Attorney General's Office, counsel for Defendants Minnesota Department of Corrections, Correctional Facility Moose Lake, Warden Becky Dooley, Joe Unknown Correctional Officer, and Julie Nummela Correctional Officer.

Jonathan P Norrie, Esq., and Christine E Hinrichs, Esq., Bassford Remele, PA, counsel for Defendants Dr. William Scheidt and Nurse Shantel Erickson.

JEFFREY J. KEYES, United States Magistrate Judge

       This matter is before the Court on the motion to dismiss filed by the defendants Nurse Shantel Erickson and Dr. William Scheidt.  (Doc. No. 19.)  Nurse Erickson and Dr. Scheidt argue that the complaint should be dismissed because the plaintiff, Michael I. Tate, failed to properly serve them.  (Doc. No. 21, E & S Mem.)  As explained below, the Court recommends that Nurse Erickson and Dr. Scheidt's motion be denied.  The Court further recommends that Tate be given an additional thirty days from the date of any order adopting this Report and Recommendation to complete a new Marshal Service Form USM-285 and that the U.S. Marshal

be required to attempt to effect service of process on Nurse Erickson and Dr. Scheidt.

The Court also has before it the motion to dismiss filed by the defendants Correctional Facility Moose Lake ("MCF-Moose Lake"), Becky Dooley, the Minnesota Department of Corrections ("DOC"), and Julie Nummela and Joe Asperheim[1] (collectively "the State Defendants").  (Doc. No. 26.)  The State Defendants assert that the Eleventh Amendment to the United States Constitution bars Tate's claims against the DOC and MCF-Moose Lake as well as any official-capacity claims against Dooley, Nummela, and Asperheim.  They also contend that: (1) Dooley, Nummela, and Asperheim lack the ability to implement Tate's request for injunctive relief; (2) Tate failed to allege any individual action by Dooley; and (3) to the extent that Tate alleged any individual capacity claims against Asperheim and Nummela, this Court should decline to exercise supplemental jurisdiction over remaining state law claims.  (Doc. No. 27, State Defs.' Mem.)  For the reasons explained below, the Court recommends that the State Defendants' motion be granted and the claims against them be dismissed.

Tate has also filed two motions to postpone or delay his lawsuit in which he seeks several forms of relief.  (Doc. Nos. 32, 42.)  As explained below, Tate's motions should be denied in part and denied in part as moot.  Finally, Tate's request that he be permitted to amend his pleadings to assert a claim against Mille Lacs County Jail should be denied.  (*See* Doc. Nos. 41, 42.)

## BACKGROUND

On July 23, 2015, Tate commenced this case by filing a complaint in which he asserted that while he was housed in Hennepin County Jail, the jail did not follow through on certain orders of his physician and that he was "sexually abuse[d]" by Hennepin County Staff.  (Doc. No. 1 at 4.)  Tate also claimed that MCF-Moose Lake was responsible for injuries he suffered at

---

[1]    The plaintiff named this defendant "Joe (last name unknown)" in his complaint.  The State Defendants identify him as Joe Asperheim, a correctional officer at MCF-Moose Lake.

MCF-Moose Lake when he fell from a top bunk due to the installation of an unsafe bar.  (*Id.*)  He also alleged that while he was housed at Kanabec County Jail, the jail failed to properly treat his pain by prescribing medication that had unwanted side effects and that its medical staff attempted to examine him in unsanitary conditions.  (*Id.*)

Because Tate is a prisoner, this Court screened his complaint and initially declined to grant his application to proceed in forma pauperis.  (Doc. No. 3.)  The Court explained that Tate could not properly sue two county jails and that Tate had not properly joined unrelated claims against unrelated entities.  (*Id.* at 1–2.)  The Court ordered Tate to file an entirely new "Amended Complaint" and instructed him to remedy the problems with his initial complaint.  (*Id.* at 3.)

Following the Court's instructions, Tate filed an amended complaint on September 8, 2015.  (Doc. No. 5, Am. Compl.)  In his amended complaint, Tate alleged the following.  He asserts that he fell from a top bunk "because of an unsafe safty [sic] bar" and that Aperhaim and Nummela refused to put in a work order to fix the bar, thus causing his fall and the resulting injuries.  (*Id.* at 4.)  He was transferred to Kanabec County Jail where he told Dr. Scheidt that he could not take certain pills due to side effects, and Dr. Scheidt prescribed Aleve to treat his pain.  (*Id.*)  Tate then saw Nurse Erickson and told her about the side effects he experienced from taking other medications.  Erickson "claimed that the pharmacy would send what they wanted to[,]" and after three to four days of taking the prescribed medications, he found out that he was taking the same pills that he told Dr. Scheidt and Nurse Erickson that he could not take due to side effects with his breathing.  (*Id.* at 4–5.)  The second time Tate saw Dr. Scheidt, Tate alleges that the doctor "tried [sic] to examine [him] with someone's fresh blood all over his clothing" and that Dr. Scheidt recommended that Tate see an orthopedic specialist about his pain issues, but that recommendation was denied because the DOC allegedly did not approve it.  (*Id.* at 5.)

Tate requested that the defendants be required to provide him the medical care that he requires to address his pain and he seeks $100,000 in damages. (*Id.* § V. Request for Relief.)

## DISCUSSION

### I.  Dr. Scheidt And Nurse Erickson's Motion To Dismiss

Dr. Scheidt and Nurse Erickson moved to dismiss Tate's claims because he failed to properly serve the amended complaint. (Doc. No. 19.) They argue that when they arrived at work at the Kanabec County Jail on Thursday, November 19, 2015, the jail staff informed them that summons and complaints had been placed on the desk in the jail medical unit, but neither Dr. Scheidt nor Nurse Erickson was personally served by a United States Marshal and they had not authorized anyone to accept service their behalf. (E & S Mem. 2.) Accordingly, they seek dismissal of the amended complaint for ineffective service of process under Federal Rule of Civil Procedure 12(b)(5). (*Id.* at 3–5.) Nurse Erickson and Dr. Scheidt also argue that because they were not effectively served within the time provided by Rule 4(m), the Court should dismiss this case. (*Id.* at 4–5.)

Rule 12(b)(5) permits a defendant to make a motion to dismiss for insufficient service of process. Properly effected service of process is a fundamental element of any lawsuit. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Defects in service of process are jurisdictional in nature. If a defendant is improperly served, a federal court lacks jurisdiction over the defendant. *Printed Media Serv., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996).

4

"Under Rule 4(m), the district court must engage in a two-step analysis of motions to dismiss a complaint premised upon untimely service of process." *Colasante v. Wells Fargo Corp.*, 81 F. App'x 611, 612 (8th Cir. 2003) (per curiam). "First, it must inquire whether the plaintiff has demonstrated good cause for his failure to serve within the prescribed 120-day period."[2] *Id.* "If the district court concludes that good cause is shown, it must extend the time for service." *Id.* at 612-13; *see* Fed. R. Civ. P. 4(m) (stating that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period"). "Second, if good cause is not shown, the district court still retains the discretion to grant an extension of the time for service." *Colasante*, 81 F. App'x at 613. "To warrant such a permissive extension, a plaintiff must demonstrate excusable neglect." *Id.* "In deciding whether to grant a permissive extension under Rule 4(m), the district court may consider other factors, including the statute of limitations, prejudice to the defendant, actual notice of the lawsuit, and eventual service." *Rice v. Univ. of N.D. Sch. of Med. and Health Scis.*, No. 2:07-cv-11, 2008 WL 5145482, at *4 (D.N.D. Dec. 8, 2008) (citing *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007). "The district court must weigh on the record the impact that a dismissal or extension would have on the parties." *Id.* (citing *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007)).

Service is governed by Rule 4 of the Federal Rules of Civil Procedure. Under Rule 4 someone other than the plaintiff must serve a summons and complaint within the time period

---

[2]     The current version of Rule 4(m) provides for a 90-day deadline for service of process. The Rule was amended in December 2015, and under the prior version of the Rule, a complaint could be dismissed for failure to prosecute if it was not served within 120 days of filing the complaint. Here, the Court should apply the 120-day deadline because this case was commenced before the change in the Rule. But Tate has not effected service of process within either of these deadlines, so the 30-day difference is immaterial.

provided by Rule 4(m).  Fed. R. Civ. P. 4(c)(1)–(2).  An individual may be served by one of the following methods:

    (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

    (2) doing any of the following:

        (A) delivering a copy of the summons and of the complaint to the individually personally;

        (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

        (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

A court may order a United States marshal or deputy marshal to effect service, Fed. R. Civ. P. 4(c)(3).  The Court did that in this case (Doc. No. 10 at 5 ¶¶ 3–4), and after Tate asked to add Dr. Scheidt and Nurse Erickson as defendants, the Court issued an order requiring Tate to complete Marshal Service Form USM-285 for each of them.  (Doc. No. 14 at 2.)  However, the record here demonstrates that neither Dr. Scheidt nor Nurse Erickson was personally served with the summons and the amended complaint as permitted by Rule 4(e).  Apparently, the summons and complaint were left with someone at Kanabec County Jail on a day when Dr. Scheidt and Nurse Erickson were not working, and neither Dr. Scheidt nor Nurse Erickson authorized anyone at the jail to accept service for them.  (Doc. No. 22, Scheidt Decl. ¶¶ 4–8; Doc. No. 23, Erickson Decl. ¶¶ 3–6.)  It also appears that no effort was made to serve either of these defendants in accordance with Minnesota law.

The time under Rule 4(m) has expired for Tate to serve Dr. Scheidt or Nurse Erickson.  Thus, his case should be dismissed unless he can show good cause for the failure or if the Court

finds that excusable neglect justifies a permissive extension of the period for service.  In response to Dr. Scheidt and Nurse Erickson's motion, Tate filed a letter on January 13, 2016, asserting that he was unable to obtain home addresses for either Dr. Scheidt or Nurse Erickson, and that he could not control the fact that neither was working on November 18, 2015 when the United States Marshals went to attempt personal service at the Kanabec County Jail.  (Doc. No. 30 at 1–2.)  On March 4, 2016, Tate filed another letter in which he asserts that he filled out papers so that "the sheriff" could serve the summons and amended complaint.  (Doc. No. 46.) He also asserts that he believes the service was not properly accomplished out of an attempt "to help cover up the doctor's & Nurse wrongfull [sic] doing."  (*Id.*)

Because he is a party, Tate cannot serve the summons and amended complaint on Dr. Scheidt and Nurse Erickson himself.  The Court granted Tate's application to proceed *in forma pauperis*, and he has explained that he completed Marshal Service Forms for both Nurse Erickson and Dr. Scheidt.  There is no evidence in the record indicating what information Tate provided in completing Marshal Service Forms for Dr. Scheidt and Nurse Erickson, but it is reasonable to assume that he gave the Kanabec County Jail work address for these defendants. Tate explained that he does not have either Dr. Scheidt's or Nurse Erickson's home address. Instead, he asserts that he completed the forms using their work addresses.  Indeed, the summons and amended complaint, along with copies of the relevant court orders arrived at Kanabec County Jail and were apparently left at these defendants' place of work.

Among the situations where good cause is likely to be found are those when a third person, typically the process server, is responsible for a failure of service, or when the plaintiff is representing himself or *in forma pauperis*.  *See Kurka v. Iowa Cnty, Iowa*, 628 F.2d 953, 957 (8th Cir. 2010) (citing 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1137 (3d ed. 2002)).  Here, Tate is pro se, he is proceeding *in forma pauperis*, and a third person, the U.S. Marshal, is responsible for the failure to personally serve Dr. Scheidt and Nurse Erickson in compliance with Rule 4.  It also appears that Tate made a genuine effort to comply with this Court's requirement that he complete Marhsal Service Form USM-285 for each of these defendants.  Under 28 U.S.C. § 1915(d), once a plaintiff has been granted leave to proceed *in forma pauperis*, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."  "So long as the prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service 'is automatically good cause with[in] the meaning of [Fed. R. Civ. P. 4(m)].'"  *Moore v. Jackson*, 123 F.3d 1082, 1085–86 (8th Cir. 1997) (quoting *Walker v. Sumner*, 14 F.3d 1414, 1422 (9th Cir. 1994)).  Although the record does not conclusively show that Tate provided the information necessary to identify Dr. Scheidt and Nurse Erickson, and it is thus unclear whether there is automatically good cause for extending the time for service, based on all the relevant considerations here, the Court nevertheless concludes that Tate has shown the requisite good cause and that the time for service of the amended complaint must be extended for an appropriate period.  Fed. R. Civ. P. 4(m) ("But if the plaintiff shows good cause for the failure [to timely serve the complaint], the court must extend the time for service for an appropriate period.").  As there is good cause for extending the time for service, the Court need not consider whether excusable neglect would justify a permissive extension of the time for making service.

Because Tate has shown good cause for the insufficient service of process on Dr. Scheidt and Nurse Erickson, the Court recommends that these defendants' motion to dismiss be denied. We further recommend that Tate be required to complete a new Marshal Service Form USM-285 within thirty (30) days of any order of the District Court adopting this Report and

Recommendation and that any such order of the District Court require the U.S. Marshal to effect

personal service on Dr. Scheidt and Nurse Erickson using the information that Tate provides.

Moreover, the Court finds that although extending the time for service will require Dr. Scheidt

and Nurse Erickson to incur some additional expense and uncertainty (*see* Doc. No. 44 at 2),

there is no reason to conclude that they will suffer any undue prejudice here if this Report and

Recommendation is adopted by the District Court.  They are aware of the substance of Tate's

claims against them and can certainly defend this case on the merits.

## II.    The State Defendants' Motion To Dismiss

### A.  Eleventh Amendment

**1.  Tate's claims against the state agencies and his official-capacity claims for damages or retroactive injunctive relief against Dooley, Nummela, and Asperheim should be dismissed because they are barred by sovereign immunity.**

The DOC, MCF-Moose Lake, Dooley, Nummela, and Asperheim have all moved to

dismiss Tate's amended complaint against them.  (Doc. No. 26.)  All the State Defendants assert

that Tate's claims against them are barred by the Eleventh Amendment.  (State Defs.' Mem. 4–

8.)  They contend that all claims against the DOC and MCF-Moose Lake are barred because

Eleventh Amendment immunity extends to state agencies and departments.  (*Id.* at 4–5.)  Further,

they contend that the Eleventh Amendment bars any official-capacity claims against Dooley,

Asperheim, and Nummela.  (*Id.* at 5.)  They also assert that under 42 U.S.C. § 1983 Tate cannot

maintain an action for damages against state agencies, state facilities, or state officers acting in

their official capacity.  (*Id.* at 5–6.)  Finally, they contend that the Court should also dismiss

Tate's claims for injunctive relief relating to his medical care against Dooley, Asperheim, and

Nummela because none of those individual State Defendants has the ability to direct or

implement Tate's medical care.  (*Id.* at 6–8.)

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996) (reaffirming that the sovereign immunity created by the Eleventh Amendment applies even when a state is sued in federal court by one of its own citizens); *Hans v. Louisiana*, 134 U.S. 1 (1890). The Eleventh Amendment thus provides sovereign immunity to the states for any suit brought in federal courts against a state agency, regardless of the nature of the relief sought, unless Congress has abrogated that immunity or the state has consented to suit or waived its immunity. *Seminole Tribe*, 517 U.S. at 74; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment also bars claims against state officials sued in their official capacities from all claims, with the exception of certain claims for prospective injunctive relief. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

Tate's claims against MCF-Moose Lake and the DOC must be dismissed because they are Minnesota agencies entitled to sovereign immunity under the Eleventh Amendment. *Edelman*, 415 U.S. at 667–68. Tate's official-capacity claims for damages and retroactive injunctive relief against Dooley, Asperheim, and Nummela (to the extent he has asserted such claims) must also be dismissed under the doctrine of sovereign immunity because such claims are no different than a claim against the State of Minnesota itself. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (explaining that a suit against a public employee in her official capacity is merely a suit against the public employer). There has been no clear waiver of sovereign immunity here. *Faibisch v. University of Minnesota*, 304 F.3d 797, 800 (8th Cir. 2002) ("To

waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so.").  Nor has Congress overridden sovereign immunity for a case such as this.  *Mashak v. Minnesota*, No. 11-cv-473 (JRT/JSM), 2012 WL 928225, at *10 (D. Minn. Jan. 25, 2012) ("Congress did not abrogate the states' immunity" when it enacted § 1983) *report and recommendation adopted by* 2012 WL 928251 (Mar. 19, 2012).  Because the Eleventh Amendment bars Tate's claims against the DOC, MCF-Moose Lake, and the individual State Defendants in their official capacities for money damages and retroactive injunctive relief, the Court lacks jurisdiction and those claims should be dismissed.  *See Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686 (8th Cir. 2011) ("[S]overeign immunity is a threshold jurisdictional matter and a jurisdictional prerequisite[.]").

> **2. Tate's claims for prospective injunctive relief against the DOC and MCF-Moose Lake should also be dismissed.**

Tate's allegations in the amended complaint appear to assert a claim for prospective injunctive relief requiring that he be provided adequate medical care.  (Am. Compl. § V, Request for Relief ("Give me the medical attention I need to find out why I'm having so much pain.").)  Under *Ex Parte Young*, 209 U.S. 123 (1908), federal courts retain jurisdiction to order State officials to conform their practices to the requirements of federal law.  However, this doctrine "does not extend to states or state agencies."  *Monroe v. Arkansas State University*, 495 U.S. 591, 594 (8th Cir. 2007).  Thus, to the extent Tate asserts his claims for prospective injunctive relief relating to his medical care against the DOC or MCF-Moose Lake, those claims should be dismissed.  The Eleventh Amendment bars such claims against these state agencies.

**3. The Court will not recommend dismissal of Tate's prospective-injunctive-relief claims against Dooley, Asperheim or Nummela under the doctrine of sovereign immunity.**

The Eighth Circuit has explained that "under the doctrine set forth in *Ex Parte Young*, state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment[.]" *Monroe*, 495 U.S. at 594. With respect to Tate's claims against Dooley, Asperheim, and Nummela for prospective injunctive relief, the State Defendants contend that because Dooley, Asperheim, and Nummela work at MCF-Moose Lake, where Tate is no longer housed, these defendants have no ability to implement any injunctive relief concerning Tate's medical care. (State Defs.' Mem. at 7–8.) The State Defendants also point out that Tate's allegations show only that the medical care at issue occurred while he was housed at the Kanabec County Jail, not at MCF-Moose Lake. (*Id.*) The State Defendants further point out that Tate did not allege that these state officials are involved in the DOC's medical decision-making. (*Id.* at 8.) And they contend that "Tate's factual allegations against Dooley, Asperheim, and Nummela do not concern his medical care." (*Id.* at 6.)

None of the cases the State Defendants have cited in this section of their argument stand for the proposition that a prisoner's claims for prospective-injunctive relief must be dismissed under the doctrine of sovereign immunity based on the possibility that such a prisoner's transfer to another correctional facility makes it impossible for the named defendants to implement the requested injunctive relief. *See Green v. Monsour*, 474 U.S. 64, 72–74 (1985) (holding that the exception to Eleventh Amendment sovereign immunity provided by *Ex Parte Young* did not apply where the petitioners alleged no continuing violation of federal law as a result of the case being mooted by changes in the federal law); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding that the *ex Parte Young* doctrine does not apply to state law claims

12

that are pendent to a claim under 42 U.S.C. § 1983 and such a supplemental claim that seeks to compel a state to comply with state law is barred by the Eleventh Amendment); *Millikin v. Bradley*, 433 U.S. 267, 289–90 (1977) (concluding that state defendants could properly be required to pay costs attributable to certain educational components of the district court's prospective-compliance order relating to desegregation of a school and the Eleventh Amendment did not render such an order outside the scope of the *Ex Parte Young* exception).  There is some authority from the Eighth Circuit that a prisoner's transfer out of a prison moots a claim for injunctive and declaratory relief to improve conditions at that facility, thereby eliminating the prisoner's standing to seek such relief.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . .  Consequently, a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.") (internal quotations and citations omitted).  But the State Defendants do not rely on these cases or explain whether or how they might be relevant in this context.

The State Defendants' arguments concerning Dooley, Asperheim, and Nummela's employment at MCF-Moose Lake, the lack of allegations concerning their involvement in medical decision-making for the DOC, and Tate's allegations regarding his medical care at Kanabec County Jail are better construed as arguments that Tate has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Accordingly, the Court will evaluate these arguments in the context of its analysis whether Tate has put forth sufficient factual allegations to show that he is entitled to relief.

### B.    Failure To State A Claim

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

### 1.    Tate fails to state a claim for prospective injunctive relief relating to his medical care against Dooley, Asperheim, and Nummela.

Liberally construing Tate's amended complaint, as we must, Tate appears to be alleging that he is still being denied adequate medical care to address his back pain and that he has still not been prescribed a medication that addresses his concerns with side effects. (Am. Compl. 4–5.) However, no factual allegations in the amended complaint plausibly suggest that Dooley, Asperheim, or Nummela are responsible for any ongoing or likely future violation of Tate's federal rights concerning his medical treatment. Tate makes no factual allegations regarding Dooley. His only factual allegations relating to these defendants are that Asperheim and

Nummela failed to complete a work order regarding replacement of the safety bar and that the failure to replace the safety bar caused Tate to fall off of the top bunk in his cell and become injured.  There is no way to charitably construe Tate's allegations against Asperheim and Nummela regarding the failure to replace the safety bar on his bed as seeking prospective injunctive relief.  These allegations relate only to the alleged cause of Tate's fall.  But these allegations do not concern Tate's ongoing treatment for his alleged back pain or the side effects of medication that he is taking.  Accordingly, to the extent Tate asserts a claim for prospective injunctive relief concerning his medical care against Dooley, Asperheim, and Nummela in their official capacities, such a claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

### 2.   Tate fails to state any individual-capacity claims against Dooley under 42 U.S.C. § 1983

The State Defendants next argue that to the extent Tate asserts any individual-capacity claims against Dooley, such claims should be dismissed because Tate has failed to allege that Dooley was personally involved in any of the acts that he identifies as the basis for his lawsuit. (State Defs.' Mem. 8–9.)  This Court agrees.  "To state a claim under § 1983, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quotations removed).  Tate's amended complaint lacks sufficient factual allegations to state a plausible entitlement to relief against Dooley because Tate does not allege that Dooley was personally involved in any decision relating to the work order he requested for the safety bar on his top bunk.  Tate also does not allege that Dooley was personally involved in the alleged failure to provide him with adequate medical care at the Kanabec County Jail.  Section 1983 does not allow a recovery from a warden of a state prison facility on a theory of respondeat superior, *see*

*Cotton v. Hutto*, 577 F.2d 453, 455 (8th Cir. 1977) (per curiam), and a warden's responsibility

for supervising the operations in a prison is insufficient to establish that the warden was

personally involved in an alleged violation of the prisoner's constitutional rights. *Glick v.*

*Sargent*, 696 F.2d 413, 414 (8th Cir. 1983) (per curiam).  Here Tate has said nothing in his

amended complaint about what Dooley did that allegedly violated his federal constitutional

rights and Dooley's only connection to this case appears to be that she is the warden of MCF-

Moose Lake.  Accordingly, Tate's individual-capacity claims against Dooley should be

dismissed.

### 3. Tate fails to state a claim under 42 U.S.C. § 1983 against Asperheim And Nummela

Next, the State Defendants argue that Tate's individual-capacity claims against

Asperheim and Nummela should be dismissed because Tate's amended complaint fails to

include factual allegations that would support individual-capacity claims against them under the

Eighth Amendment.  (State Defs.' Mem. 9–11.)  Specifically, the State Defendants contend that

Tate's amended complaint does not allege that they engaged in any intentional conduct or were

deliberately indifferent to Tate's safety.  (*Id.*)

Tate's claim relating to conditions of his confinement (i.e., the safety of the bed he is

provided) is analyzed under the Eighth Amendment's deliberate-indifference standard.

*Reynolds*, 636 F.3d at 979.  "A prison official is deliberately indifferent if he knows of and

disregards a substantial risk of serious harm to an inmate." *Id.* (quotations omitted).

"[D]eliberate indifference includes something more than negligence but less than actual intent to

harm; it requires proof of a reckless disregard of the known risk." *Id.* (citing *Crow v.*

*Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (quoting *Jackson v. Everett*, 140 F.3d 1149,

1152 (8th Cir. 1998)) (alteration in the original and internal quotation marks omitted)).

As noted above, the only allegations concerning Asperheim and Nummela's conduct are as follows:

> I fell from a top bunk bed because of a[n] unsafe safty [sic] bar. . . . . Officers Joe & Julie refused to put in a work order in when I asked on 5-15-15 & on 05-17-15. Because of that refusal to have the safty [sic] bar fixed I fell and was hurt.

(Am. Compl. 4.) Tate's allegations are pretty bare bones and conclusory, but there is at least some additional basis in the record to examine whether he has alleged a sufficient deliberate indifference claim.  Looking at the other items that are part of the Court record, on March 10, 2015, Tate submitted a prison grievance form in which he claimed that he should have been provided a cane and placed on a lower bunk and restricted to a lower tier, but was assigned to a top bunk and required to go up and down stairs every day.  (Doc. No. 1-1 at 49.)  On April 13, 2015 and April 22, 2015, in separate grievance forms Tate mentioned a lower-bunk restriction that he felt should have been ordered after his orientation physical upon arrival at MCF-Moose Lake.  (Doc. No. 1-1 at 50–51.)  The prison responded to Tate and explained that his medical records did not support restriction to a lower bunk.  (*Id.*)  He appealed the ultimate denial of this grievance form on April 29, 2015, explaining that he had previously had a lower-bunk restriction while at a facility in Lino Lakes and in Hennepin County Jail.   (Doc. No. 1-1 at 56.)  There is also a prison grievance form submitted to the DOC from May 7, 2015 in the record, but Tate does not mention anything relating to the alleged problems with the safety bar on the top bunk. (*See* Doc. No. 1-1 at 58.)  On June 4, 2015, Tate completed a Kanabec County Jail grievance form explaining that he had been hurt from failing from a top bunk.  (Doc. No. 1-1 at 74.)

Looking at all these matters in the light most favorable to Tate, we still cannot conclude that he has adequately alleged that Asperheim and Nummela acted with deliberate disregard to Tate's safety.  We have to assume for the purposes of this motion that Tate put in a prison

17

grievance form on May 15 and May 17, 2015, that Asperheim and Nummela were aware of those forms, that those forms addressed an issue with the safety bar on the top bunk, and that Asperheim and Nummela rejected that request.  But there are no other specific factual allegations concerning those grievance forms or what information was in them.  Therefore, we cannot reasonably infer from the factual allegations that Asperheim or Nummela knew of a serious risk to Tate's safety posed by an allegedly unsafe bar designed to prevent him from falling off his top bunk and then recklessly disregarded that known risk to Tate's safety.  The facts reflected in Tate's prison grievances, which he attached to his original complaint, also do not support such an inference.

*Reynolds v. Dormire*, 636 F.3d 976 (8th Cir. 2011), illustrates the reasons that Tate's allegations fall short.  In *Reynolds*, the Eighth Circuit found an inmate's allegations against two correctional officers to be sufficient to state a claim under the Eighth Amendment where he alleged that they deliberately disregarded a known risk to his safety posed by a pit near a sally port where prisoners exited a prison van used to transport the plaintiff.  636 F.3d at 980–81. There, the court noted that the inmate's complaint and the attached grievances contained "sufficient allegations to withstand dismissal" where the plaintiff alleged the following: (1) a defendant parked the ban close to the edge of the pit; (2) the plaintiff was shackled and secured with a solid form of handcuffs; (3) the plaintiff had to back out of the van using a stool to get out of the vehicle; (4) that as the plaintiff left the van, one defendant backed away from him rather than assisting him; (5) a prison grievance asserted that the correctional officers knew that the pit posed a hazard because another person had fallen into the pit the same day; and (6) another prison grievance asserted that a correctional officer said right after the incident that he had warned that parking close to the pit would lead to a prisoner falling into the pit.  *Id.*  Based on

these allegations, and applying the standard of Rule 12(b)(6), the court concluded that the

plaintiff in *Reynolds* had sufficiently alleged that the defendants were aware of a serious risk to

his safety and deliberately disregarded that risk when they parked too close to the pit.  *Id.*  Tate's

amended complaint and his prison grievances in the record do not provide a similar level of

detail that makes it reasonable to draw such inferences here about Asperheim and Nummela's

knowledge of an alleged risk to Tate's safety.

### C.  Supplemental Jurisdiction

Finally, the State Defendants assert that to the extent Tate has attempted to allege a

negligence or personal injury claim against Asperheim and Nummela under state law, the Court

should decline to exercise supplemental jurisdiction over such claims under 28 U.S.C.

§ 1367(c)(3).  (State Defs.' Mem. 11–12.)  If all federal claims in this lawsuit are dismissed

against the State Defendants, they contend that the Court should exercise its discretion to decline

supplemental jurisdiction because this case is at an early stage and Tate has an available state

forum in which to resolve any state claims.  (*Id.* at 12.)  The Court agrees.  If the District Court

agrees that all the federal claims against the State Defendants should be dismissed, to the extent

that Tate intends to assert a claim for negligence against Asperheim and Nummela under

Minnesota tort law, such state law claims should be dismissed under 28 U.S.C. § 1367(c)(3).

Section 1367(c)(3) provides that "district courts may decline to exercise supplemental

jurisdiction over a [pendent state law claim] if . . . the district court has dismissed all claims over

which it has original jurisdiction."  In deciding whether to exercise such jurisdiction, we consider

the following: (1) the stage of this litigation; (2) the relative difficulty of the state claim; (3) the

amount of time and energy necessary for the claim's resolution; and (4) the availability of a state

forum.  *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.,* 5 F. Supp. 2d 694, 711 (D. Minn.

1998).  We should "exercise judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir. 1990).

None of these considerations suggest that the exercise of jurisdiction over any remaining state law negligence claim would be appropriate.  This case is in its very early stages.  Though the negligence claim Tate may be asserting does not appear to be particularly difficult to analyze, the burdens in resolving this claim on the court are not going to be insubstantial.  Nor is there any reason to think that Minnesota's courts could not adjudicate Tate's negligence claim. Accordingly, this Court recommends that any remaining state law negligence claim against Asperheim and Nummela be dismissed under 28 U.S.C. § 1367(c)(3).

## III.   Tate's Motions

As noted above, Tate has filed two motions asking to delay or postpone this lawsuit. (Doc. Nos. 32, 42.)  Tate has also filed a letter seeking leave to amend his complaint. (Doc. Nos. 41; *see also* Doc. No. 42 at 2).

### A.  Tate's Motions To Delay Or Postpone This Lawsuit

In the first of Tate's motions to delay or postpone this lawsuit, Tate essentially asserts that his case should be stayed until he is transferred back to a DOC facility because he is confined at a county jail that lacks access to a law library.  (Doc. No. 32.)  He also requests that he be provided his entire medical file (apparently the original records and not a photocopy) for use in these proceedings.  (*Id.*)  In the second of these motions, Tate again asks that his case be delayed or postponed until after May 21, 2016, when he would be transferred back into a DOC facility that has an adequate law library.  (Doc. No. 42 at 1.)  He also asserts that the State Defendants submitted a false affidavit in support of their motion.  (*Id.*)  And Tate asserts that

Mille Lacs County Jail staff improperly photocopied his medical files and seeks to add Mille

Lacs County Jail as a defendant.  (*Id.* at 2.)

To the extent Tate seeks a stay of this litigation, the Court concludes that no stay is

warranted.  District courts have the inherent authority to stay proceedings pending before them.

This power is "incidental to the power inherent in every court to control the disposition of the

causes on its docket with economy of time and effort for itself, for counsel, and for the litigants."

*Landis v. N. American Co.*, 299 U.S. 248, 254 (1936); *Lunde v. Helms*, 898 F. 2d 1343, 1345

(8th Cir. 1990).  The party seeking a stay "has the burden of showing specific hardship or

inequity if he or she is required to go forward."  *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir.

1996).  In considering whether the party seeking the stay has carried this burden, courts may

consider "the competing interests of the parties, and the hardship or inequity a party may suffer if

a stay is granted."  *Scheffler v. Equifax Info. Servs.*, No. 15-cv-3340 (JRT/FLN), 2016 WL

424969, at *2 (D. Minn. Feb. 3, 2016).  Tate has not shown a specific hardship or inequity if he

is required to go forward based on his asserted interest in having access to a more substantial law

library.  The defendants' competing interest in having this case move toward a resolution also

weighs heavily against granting Tate's request that this litigation be stayed.  To the extent Tate

seeks a stay of this litigation, his motions should be denied.

If Tate is asking that his lawsuit against Dr. Scheidt and Nurse Erickson not be dismissed,

the Court refers to its recommendation above that Tate be allowed additional time to effect

service on these defendants; as a result, such a request should be denied as moot.  If Tate is

asking the Court not to dismiss his lawsuit against the State Defendants, for the reasons stated in

Part II of this Report and Recommendation, such a request should be denied.

In one of his motions, Tate also requested that he be provided with the original documents in his medical file rather than any photocopy. (Doc. No. 32.) This request should be denied. Tate has provided no legal basis for such a request, and this Court is not aware of any basis on which any of the defendants in this action could be required to grant him such relief.

Accordingly, the Court recommends that Tate's motions (Doc. Nos. 32, 42) be denied in part and denied in part as moot, consistent with the discussion above.

**B. Tate's Other Requests For Relief**

Tate has also filed a letter dated January 11, 2016. In that letter Tate seeks leave to add Mille Lacs County Jail as a defendant in this case. (Doc. No. 41.) In his second motion to "delay or postpone" this lawsuit, Tate repeats this request and explains:

> Not only did they [Mille Lacs County Jail staff] copy my private medical files, but they passed them around form [sic] one staff to another in a big envelope that wasn't sealed nore [sic] was it secured. Any one of the staff that handled that envelope could have read my medical file! The person that gave it to me wasn't even a medical staff person! I was asking the court if I could in fact add Mille Lacs County Jail into my civil lawsuit for not rec[e]iving my permission or my authorization.

(Doc. No. 42 at 2.) The Court construes this as a request to amend the complaint to add a claim against Mille Lacs County Jail.

Except where amendment is permitted as a matter of course, which is not the case here, under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend rests in the discretion of the trial court. *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986). "There is no absolute right to amend." *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999). "[D]enial of

22

leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557–58 (8th Cir. 2006) (same).  A motion to amend the complaint is futile where "claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (stating that a motion to amend is futile if the amended complaint would not survive a motion to dismiss).

Tate's proposed amendment adding Mille Lacs County Jail should be denied based on futility.  As the Court previously explained, a county jail is not a party that has the legal capacity to be sued.  *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *De La Garza v. Kandiyohi County Jail*, 18 Fed.Appx. 436, 437 (8th Cir. 2001) (unpublished opinion); (Doc. No. 3 at 1–2.)  Moreover, adding such a claim against any individuals at Mille Lacs County Jail regarding their handling of his medical files would also reintroduce the problem that existed when Tate first filed this action, namely, it would combine unrelated claims against unrelated defendants into a single action, thereby running afoul of Fed. R. Civ. P. 20(a)(2).  (Doc. No. 3 at 2–3.)  For these reasons, Tate's request to amend the complaint to add a claim against Mille Lacs County Jail should be denied.

## RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that:

1.      Dr. Scheidt and Nurse Erickson's motion to dismiss for insufficient service of process (Doc. No. 19) be **DENIED**.  Tate should be required to complete a new Marshal Service Form USM-285 for Dr. Scheidt and Nurse Erickson within thirty (30) days of any order of the District Court adopting this Report and Recommendation and any such order of the District Court should require the U.S. Marshal to effect personal service on Dr. Scheidt and Nurse Erickson using the information that Tate provides;

2.      The State Defendants' motion to dismiss (Doc. No. 26) be **GRANTED**;

3.      Tate's motions to delay or postpone this lawsuit (Doc. Nos. 32, 42) be **DENIED IN PART** and **DENIED IN PART AS MOOT**; and

4.      Tate's motion to amend the pleadings to assert a claim against Mille Lacs County Jail (Doc. Nos. 41, 42) be **DENIED**.

Date: April 1, 2016

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.