UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL I. TATE,                                   Civ. No. 15-3115 (WMW/JSM)
a/k/a MICHAEL M. JOHNSON,

      Plaintiff,                              **REPORT AND RECOMMENDATION**

v.

WILLIAM SCHEIDT,

      Defendant.

     The above matter came before the undersigned on defendant Dr. William

Scheidt's Motion to Dismiss [Docket No. 62].   This motion was referred to the

undersigned United States Magistrate Judge for a Report and Recommendation by the

District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.1(c).

## I.    BACKGROUND

### A.    <u>Procedural History</u>

     Plaintiff Michael Tate,[1] who is incarcerated, initially sued the Minnesota

Department of Corrections ("DOC"), Correctional Facility Moose Lake ("MCF-Moose

Lake"), the Hennepin County Jail, and the Kanabec County Jail.   Complaint, p. 1

[Docket No. 1].   Tate alleged sexual abuse by Hennepin County Jail staff and that the

Hennepin County Jail refused to implement his physician's orders and "play[ed] with his

medication."   <u>Id.</u>, pp. 4, 6.   Specifically, Tate alleged that his pain pills came up short, he

---

[1]      Tate is also known as Michael M. Johnson.   Elsewhere in the Complaint he
refers to himself as Michael Wilson.   Complaint, p. 3 [Docket No. 1].   The Court will refer
to him as "Tate."   Further, the Court will refer to the page numbers assigned by the
Court's electronic filing system to Tate's submissions, as some of his pleadings are not
numbered consecutively (<u>e.g.</u> the Complaint jumps from page 1 to page 4) or contain
handwritten pages, which are unnumbered.

was not given a heating pad, and his wheel chair was taken from him.  Id., p. 6.  Tate

claimed that MCF-Moose Lake was responsible for injuries he suffered at MCF-Moose

Lake when he fell from a top bunk due to the installation of an unsafe bar.  Id., pp. 4, 6.

Tate also claimed that when he was housed at the Kanabec County Jail, he was "tricked

into taking a bad drug twice" even though he told medical staff that he had bad side

effects from the drug.[2]  Id., pp. 4, 7.  Additionally, while at the Kanabec County Jail, Tate

alleged he was examined by someone (later identified as defendant Dr. William Scheidt)

with "someone else's blood all over his clothing," which Tate asserted "was very

unprofessional."  Id.  Tate sought an unidentified amount of money damages for his pain

and suffering.  Id., p. 7.

In his Complaint, Tate asserted that he had presented the facts relating to his

Complaint to the Kanabec County Jail through the prisoner grievance procedure and

referenced the documents he had attached to his Complaint.  Id., p. 3.  Tate attached

88 pages of exhibits to his Complaint.  [Docket No. 1-1].  These exhibits include some

printouts from the internet on drugs that do not appear to be at issue, Tate's medication

records, and dozens of inmate grievance forms, generally relating to his medical care.

Id.  Only two grievance documents were directed to the Kanabec County Jail.  Docket

No. 1-1, pp. 69, 74.  On June 18, 2015, Tate questioned the grievance process, (id., p.

69,) and on June 4, 2015, he complained about not being referred to a physical

---

[2]      Tate wanted Aleve and was prescribed its generic equivalent, Naproxen.  See
Docket No. 1-1, p. 4; Amended Complaint, p. 5 [Docket No. 5].  Aleve (Naproxen) is an
over-the-counter nonsteroidal anti-inflammatory drug used for the management of mild
to        moderate        pain,        fever        and        inflammation.
http://www.medicinenet.com/naproxen/article.htm.

therapist and that it was very unprofessional for Dr. Scheidt to have blood all over his clothing.  Id., p. 74.

Because Tate is a prisoner, the Court screened his Complaint and declined to grant his In Forma Pauperis petition.  Order dated August 20, 2015 [Docket No. 3].  The Court explained that Tate could not sue two county jails and he had not properly joined unrelated claims against unrelated entities.  Id.  The Court directed Tate to file an amended complaint that satisfied the pleading requirements as described by the Court in the Order.  Id.

Tate filed his Amended Complaint on September 8, 2015.  [Docket No. 5].  The Amended Complaint named the DOC, MCF-Moose Lake, Becky Dooley (the Warden at MCF-Moose Lake), and Joe (Last Name Unknown) Correctional Officer.  Amended Complaint, pp. 1, 4 [Docket No. 5].  The Amended Complaint again alleged that Tate fell from his top bunk due to a faulty safety bar for which "officers Joe and Julie"[3] refused to put in a work order to repair.  Id., p. 4.  Tate further alleged that on May 21, 2015, he was transferred to the Kanabec County Jail where he told  Dr. William Scheidt that there were "some pills [he] couldn't take because of bad side effects" and Dr. Scheidt prescribed Aleve to treat Tate's pain, but that is not what he took.  Id.  A week later, Tate saw nurse Shawntel Erickson and told her about the side effects that he experienced from taking "the pills [he] took before" (presumably, Naproxen) and that he had told Dr. Scheidt that he could not take them, Erickson "claimed that the pharmacy would send what they wanted to," and Erickson then reordered the Aleve for Tate.  Id., pp. 4-5.  However, after taking the reordered medication, Take discovered he was

---

[3]      These individuals were later identified as Joe Asperheim and Julie Nummela.

ingesting the same pills he had told Dr. Scheidt and Erickson he could not take due to bad side effects with his breathing.  Id., p. 5.  Tate also alleged that the second time that he saw Dr. Scheidt, the doctor tried to examine him with "someone's fresh blood all over his clothing." [4]  Id., p. 5.  Dr. Scheidt recommended that Tate see an orthopedist about his pain issues, but that recommendation was denied because, according to Tate, the DOC did not approve it.  Id.  As relief, Tate stated: "Give me the medical attention I need to find out why I am having so much pain.  And pay for all my pain and suffering $100,000."  Id.

In response to the question, "Did you present the facts relating to your complaint in the prisoner grievance procedure?," Tate answered that he had "[r]equested medical help, wrote grievance, appeal grievance, wrote to case worker," and referenced the papers he had sent with his Complaint.  Id., p. 3.

On October 13, 2015, Tate filed a "Motion to Add Defendants" seeking to add Dr. William Scheidt, Julie Nummela (a correctional officer at MCF-Moose Lake) and nurse Shawntel Erickson.  [Docket No. 12].  The Court granted Tate's motion and these individuals were added as defendants.  Order dated October 21, 2015 [Docket No. 14].

Dr. Scheidt and Erickson moved to dismiss based on lack of proper service. [Docket No. 19].  The Court recommended that the motion be denied based on Tate's showing of good cause for the insufficient service of process on these defendants. Report and Recommendation dated April 1, 2016, p. 8 [Docket No. 47].  The Court found that Tate had attempted to comply with the requirements of service by the U.S. Marshal in light of his IFP status, but for whatever reason, service was not effected.  Id.

---

[4]     Despite these allegations against Dr. Scheidt, Tate did not name him as a defendant at this time.

The Court recommended that Tate be allowed to complete a new Marshal Service Form within 30 days of any order of the District Court adopting the Report and Recommendation and that the District Court require the U.S. Marshal to effect personal service on Dr. Scheidt and Erickson based on the information Tate would provide. Id., p. 9.

In a separate motion, the DOC, MCF-Moose Lake, Dooley, Nummela and Joe Asperheim moved to dismiss based on Eleventh Amendment immunity. [Docket Nos. 26, 27]. The Court recommended that Tate's claims against MCF-Moose Lake and the DOC be dismissed because they are Minnesota agencies entitled to sovereign immunity under the Eleventh Amendment. Report and Recommendation dated April 1, 2016, p. 10 [Docket No. 47]. The Court further recommended that Tate's official-capacity claims for damages and retroactive injunctive relief against Dooley, Asperheim, and Nummela (to the extent he asserted those claims) be dismissed on sovereign immunity grounds. Id. To the extent the Tate sought prospective injunctive relief related to his medical care, the Court recommended dismissing those claims against the DOC and MCF-Moose Lake because the Eleventh Amendment barred such claims against state agencies. Id., p. 11. The Court declined to recommend dismissal of the prospective injunctive relief claims against Dooley, Asperheim or Nummela under the doctrine of sovereign immunity, but nevertheless concluded that Tate failed to state a claim for prospective injunctive relief against these defendants. Id., pp. 14-15. The Court also found that Tate failed to state any individual capacity claims against Dooley, Nummela and Asperheim based on 42 U.S.C. § 1983. Id., pp. 15-19. To the extent Tate was asserting state law claims against Asperheim and Nummela based on negligence or

personal injury, the Court recommended that the District Court not exercise supplemental jurisdiction over those claims. Id., pp. 19-20.

Tate objected to the Report and Recommendation. [Docket No. 49]. The District Court adopted the Report and Recommendation, but modified it to require that service of process on Dr. Scheidt and Erickson be completed 30 days from the date of the Court's Order. Order dated June 27, 2016 [Docket No. 56]. On June 28, 2016, an executed summons was returned stating that Dr. Scheidt was served on June 23, 2016 [Docket No. 60]. An unexecuted summons was returned regarding Erickson, which stated that she "no longer works at facility no forwarding information." [Docket No. 61].

Dr. Scheidt filed the instant motion to dismiss in lieu of answering the Amended Complaint and the District Court referred the motion to this Court. This Court advised the parties that it would decide the motion based on the written submissions. Order dated July 18, 2016 [Docket No. 70].

## B.  Dr. Scheidt's Motion to Dismiss

Dr. Scheidt moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."), pp. 3-10 [Docket No. 64]. Dr. Scheidt contended that he was entitled to qualified immunity because his alleged conduct did not violate a clearly established constitutional right. Id., pp. 4-9. Dr. Scheidt argued that to clear the hurdle of official immunity, Tate was required to show that Dr. Scheidt's conduct: 1) violated a constitutional right; 2) the constitutional right was clearly established; and 3) Dr. Scheidt should have known that his conduct violated a constitutional right. Id., p. 4 (citing Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006)). Dr. Scheidt submitted that

6

to prevail on a claim of constitutionally inadequate medical care under the Eighth Amendment, an inmate must show that he suffered objectively serious medical needs and that prison officials knew of but deliberately disregarded those needs. Id., p. 5 (citing Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To establish deliberate indifference, an inmate must show more than negligence or even gross negligence. Id., p. 6. Deliberate indifference is tantamount to criminal recklessness, which demands more than negligent misconduct. Id. (citing Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008)). Further, mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Id., pp. 6-7 (citing Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no Eighth Amendment violation because inmate disagreed with physician's choice of medication); Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) ("mere disagreement with treatment decisions does not rise to the level of a constitutional violation"); Long v. Nix, 86 F.3d 761, 765 (8th Cir.1996) ("Nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (claims properly dismissed because they were based on "nothing more than mere disagreement with the course of his medical treatment")).

Here, Dr. Scheidt's decision to treat Tate using one medication rather than another did not violate the Eighth Amendment and, therefore, did not amount to the violation of a clearly established constitutional right. Id., pp. 6-7 (citing Stanton v. Sims,

134 S.Ct. 3, 5 (2013)).   Further, Tate did not claim that he had a serious medical condition, the prescribed medication caused adverse side effects to him, or the pain medication failed to treat his condition.   Id., pp. 7-8.   In fact, "by Plaintiff's own admission, he received the very medication he requested, albeit the generic form."   Id., p. 8.   On these grounds, Dr. Scheidt asserted that Tate's Amended Complaint failed to establish a constitutional violation, and Dr. Scheidt was entitled to qualified immunity.

Likewise, Tate's allegation that Dr. Scheidt tried to examine Tate with blood on his clothing failed to describe a violation of a clearly established constitutional right.   Id. According to Dr. Scheidt, this allegation was unrelated to any medical condition or a deliberate indifference to any condition, and at best, it was a complaint about Dr. Scheidt's office demeanor and professionalism.   Id., p. 8.   Therefore, Dr. Scheidt was entitled to qualified immunity on this claim as well.   Id.

Alternatively, Dr. Scheidt argued that Tate's claims had to be dismissed because Tate failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997(e).   Id., p. 9.   The PLRA requires prisoners to exhaust all available administrative remedies before bringing suit, and if they fail to do so then dismissal of the lawsuit is mandatory.   Id., (citing Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003)).   While Tate filed dozens of grievance forms with his initial complaint, only two were from the Kanabec County Jail. Id. (citing Docket No. 1-1, pp. 69, 74).   In the grievance form at page 69, Tate questioned the grievance process and in the form at page 74, he complained about not being referred to a physical therapist and that it was very unprofessional for Dr. Scheidt to have blood all over his clothing.

Id.  Neither grievance referred to medications.  Id.  As a result, Tate failed to exhaust his administrative remedies and his claims must be dismissed.[5]  Id., pp. 9-10.

Tate opposed the motion, contending that Dr. Scheidt should be "fined" for his unprofessional behavior in examining Tate in clothing covered in another patient's blood.  Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl.'s Mem. in Opp."), p. 1 [Docket No. 72].[6]  Tate contended that Dr. Scheidt should have known that this behavior was unsafe and unprofessional and "because of life-threatening diseases and other infections no doctor should examin[e] any patient with someone else's blood on them!"  Id.  Tate stated that he told Erickson that he did not want to take Naproxen for his pain because it affected his breathing and she claimed "to stop them" (i.e. the Naproxen) but then Erickson said he was re-issued the Naproxen because "that's what the pharmacy wanted to send . . ."  Id., p. 2.  Tate stated that "these charges should not be dismissed!  Because the doctors & nurses think & believe that they can get away with treating folks any kind of way just because their [sic] in a county jail or in prison."  Id.

In reply, Dr. Scheidt noted that Tate's response merely reiterated the allegations in his Amended Complaint and he did not provide any legal authority for the proposition that prescribing the generic form of a medication or examining a patient with blood on one's clothing constituted an Eighth Amendment violation.  Defendant's Reply ("Def.'s

---

[5]   Dr. Scheidt conceded that the grievance at page 74 referenced Tate's allegation that Dr. Scheidt had blood on his clothes, but stated that this allegation did not rise to the level of an Eighth Amendment violation.  Def.'s Mem., p. 9, n.3.

[6]   Tate wrote a letter to the "courts" addressing Dr. Scheidt's motion to dismiss, which the Clerk's Office and this Court has construed as Tate's memorandum in opposition to the motion.

Reply"), pp. 2-3 [Docket No. 73].  Additionally, Dr. Scheidt contended that neither in the Amended Complaint, nor in Tate's response to the Motion to Dismiss did he allege any actual harm or damages as a consequence of Dr. Scheidt's alleged conduct, and thus, the lack of any alleged harm warranted dismissal.  Id., pp. 2-3.  Finally, Dr. Scheidt noted that Tate did not address his arguments regarding failure to exhaust his administrative remedies and that Tate indisputably failed to comply with the PLRA's exhaustion requirement.  Id., p. 4.

Tate filed an unauthorized surreply.  Plaintiff's Surreply ("Pl.'s Surreply") [Docket No. 75].[7]  Tate conceded that Dr. Scheidt "may not have violated by 8th Amendment[ ] [rights] but he violated his "leg[al] right amendments[ ]" including his right to professionalism and his right to clean and safe medical care.  Id., p. 1.  Tate wrote: "But again let's go over the rights [Dr. Scheidt] did violate, the right to receive safe & clean treatment and my legal human rights."  Id., p. 2.  As for Dr. Scheidt's argument that Tate had no alleged any harm or damages flowing from Dr. Scheidt's conduct, Tate stated that the reason he brought the suit was because of the bad side effects with his breathing.  Id., p. 1.

Tate also contended that he had exhausted his administrative remedies by filing written grievances, but the Kanabec County Jail refused to respond.  Id., pp. 1-2.   Tate

---

[7]     Surreplies are not typically permitted and Tate did not seek leave to file an extra brief.  See D. Minn. LR 7.1 (listing the permitted documents for a dispositive motion and stating that a party must not file a memorandum of law except as expressly permitted under LR 7.1).   Nonetheless, in light of Tate's pro se status, the Court considered the surreply.  See Tyler v. Salazar, Civ. No. 10-1161 (JNE/LIB), 2012 WL 3113866, at *8 (D. Minn. June 27, 2012) ("Pro se Plaintiffs are regularly granted significant leeway in this court which is designed to compensate pro se litigants' lack of legal expertise.")

further stated that the grievance process was such that the grievances could be lost and therefore, there would be no proof that he had written a grievance.  Id.. p. 1.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To satisfy the requirements of Twombly and Iqbal, "a complaint need not contain 'detailed factual allegations,' . . . ." United States ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012) (quoting Twombly, 550 U.S. at 555).  However, "'[t]he facts alleged in the complaint must be enough to raise a right to relief above the speculative level.'" Mickelson v. Cty. of Ramsey, 823 F.3d 918, 922 (8th Cir. 2016) (quoting Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Kelly v. City of Omaha, Neb., 813 F.3d 1070, 1075 (8th Cir. 2016) (citation omitted).  "[C]onclusory statements' and 'naked assertion[s] devoid of further factual enhancement'" are insufficient to satisfy this standard. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012) (quoting Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss, a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); Fed.

R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").   Plaintiff attached 88 pages of exhibits to his initial complaint and the Court has considered all of these materials.

Pro se complaints, "however inartfully pleaded" are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972); see Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004) ("w]hen we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.").

At the same time, the court's liberal construction does not extend to allowing defective and insufficiently pled claims to proceed.  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). ("[A]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."); Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir. 1981) ("[P]leadings * * *brought pro se [ ] are to be liberally construed. * * * But a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts." (citations omitted)).   A pro se complaint "must allege sufficient facts to support the claims advanced * * * we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."  Stone, 364 F.3d at 914 (citations omitted).  Neither may the courts, in granting the deference owed to pro se parties, "assume the role of advocate for the pro se litigant."  Barnett, 174 F.3d 1133.

**B.**    **Claims Under 42 U.S.C. § 1983**

Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . .

42 U.S.C. § 1983.

Pursuant to § 1983, an individual may "vindicate rights conferred by the

Constitution or laws of the United States." Wilson v. Spain, 209 F.3d 713, 715 (8th Cir.

2000).  Section 1983 is not "a source of substantive rights, but a method for vindicating

federal rights elsewhere conferred by those parts of the United States Constitution and

federal statutes that it describes."  Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979).

To successfully plead a §1983 cause of action, a plaintiff must allege a set of historical

facts, which, if proven true, would demonstrate that the named defendants violated the

plaintiff's federal constitutional rights while acting under color of state law.  West v.

Atkins, 487 U.S. 42, 48 (1988).  Further, "[l]iability under §1983 requires a causal link to,

and direct responsibility for, the deprivation of rights" protected by the Constitution.

Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey County,

954 F.Supp. 1392, 1397 (D. Minn.1997) (same).

**C.**    **Qualified Immunity**

"Under the doctrine of qualified immunity, a court must dismiss a complaint

against a government official in [her] individual capacity that fails to state a claim for

violation of 'clearly established statutory or constitutional rights of which a reasonable

person would have known.'"   Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   The Court must consider: (1) "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right;" and (2) "whether the right was clearly established at the time of the alleged infraction." Hager, 735 F.3d at 1013–14.   If both of these questions are answered affirmatively, then the official is not entitled to immunity. Id.   A constitutional right is clearly established if "a reasonable official would understand that what he is doing violates [the plaintiff's right]."   Janis v. Biesheuvel, 428 F.3d 795, 799 (8th Cir. 2005) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).   The Court must grant qualified immunity to a government official, in her individual capacity, if "immunity can be established on the face of the complaint."   Bradford v. Huckabee, 330 F.3d 1038, 1041 (8th Cir. 2003).

## III.   DISCUSSION

The Court recommends that Tate's claims against Dr. Scheidt be dismissed on the basis of qualified immunity.   As a preliminary matter, as Dr. Scheidt noted, Tate did not directly address Dr. Scheidt's substantive arguments regarding dismissal in his response and surreply and as a result has waived any opposition.   Def.'s Reply, p. 1; Pl.'s Mem. in Opp.   When "presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.   The federal courts will not invent legal arguments for litigants."   Stransky v. Cummins Engine Co., Inc., 51 F.3d 1329, 1335 (7th Cir. 1995); see also Snyder v. Collura, 812 F.3d 46, 49 (5th Cir. 2016) ("The filing of that motion [to dismiss] also provided [plaintiff] with an opportunity to do what his complaint need not have done: explain his position on why the alleged facts

14

supported a finding of liability under the law."). A party's failure to oppose specific arguments in a motion to dismiss results in waiver of those issues. See Richards v. State of Minnesota, Civ. No. 13-3029 (JRT/JSM), 2016 WL 818657 at *12 (D. Minn. Jan. 15, 2016) (pro se plaintiff's failure to respond to defendants' arguments in favor of dismissal resulted in waiver of his right to object); Njema v. Wells Fargo Bank, N.A., 124 F. Supp. 3d 852, 866 (D. Minn. 2015) (failing to respond to defendant's statements in a motion for summary judgment regarding damages resulted in waiver of plaintiff's argument on that point) (citing Salaimeh v. Messerli & Kramer, P.A., Civ. No. 13–3201 (DSD/HB), 2014 WL 6684970, at *2, n. 2 (D. Minn. Nov. 25, 2014) (noting that plaintiff did not address certain issues raised by defendant in her opposition to summary judgment and stating "[a]lthough this court considers those claims, it notes that they have been effectively waived.") (citing Satcher v. University of Ark. at Pine Bluff Bd. Of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.")).

At most, Tate obliquely addressed Dr. Scheidt's arguments by stating that while Dr. Scheidt "may not" have violated his Eighth Amendment rights, he violated other constitutional rights including Tate's right to professionalism and his right to clean and safe medical care. Pl.'s Surreply, p. 1. This statement not only tacitly admitted that there was no violation of the Eighth Amendment but more significantly, failed to explain the source of any alleged constitutional right to professionalism and safe and clean medical care or how these rights were clearly established such that Dr. Scheidt would know that he was violating Tate's rights. In short, Tate's statements came nowhere near addressing the substantive merits of Dr. Scheidt's motion to dismiss on qualified

immunity grounds, and are waived.  See United States ex.rel. Verdone v. Circuit Court of Taylor County, 73 F.3d 669, 673 (7th Cir. 1995) (per curiam) ("Even pro se litigants . . . must expect to file a legal argument and some supporting authority.")

Second, the Court finds that dismissal is warranted for substantive legal reasons. Tate did not specifically reference the Eighth Amendment in his Amended Complaint, but the thrust of his suit is that he sought damages based on Dr. Scheidt's alleged indifference to the purported side effects from Naproxen and for exposing him to blood-covered clothing, claims which clearly implicate the Eighth Amendment.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  Prison officials violate the Eighth Amendment if they commit "acts or omissions sufficiently harmful to evidence deliberate disregard to [an inmate's] serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To succeed on a deliberate-indifference claim, Tate must show that he suffered from an objectively serious medical need and Dr. Scheidt knew of, but deliberately disregarded, that need.  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000).  To establish deliberate indifference to a serious medical need, Tate must "show more than negligence, more even than gross negligence . . . ."  Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  "Deliberate indifference is akin to criminal recklessness."  Popoalii, 512 F.3d at 499.

Dr. Scheidt is entitled to qualified immunity because no facts alleged in the Amended Complaint indicated that Dr. Scheidt violated the Eighth Amendment – that is, that he deliberately disregarded Tate's serious medical needs.  Accepting as true Tate's statements that he told Dr. Scheidt that Naproxen gave him "bad side effects," Tate

proceeded on to state that it was the prison pharmacy, not Dr. Scheidt, that substituted Naproxen for Aleve.   Amended Complaint, p. 5.   Further, accepting as true Tate's statement that Dr. Scheidt examined him with "blood all over this clothes," (Amended Complaint, p. 5), this allegation does not rise to the level of an Eighth Amendment violation.   Tate raised the possibility of infection and life-threatening diseases to which he may have been exposed, (Pl.'s Mem. in Opp., p. 1), but this speculative claim does not satisfy Twombly and its progeny.   For example, Tate did not allege in the Amended Complaint that he came into contact with this blood, or that he suffered any ill effects from this blood, or that he suffered from some condition that was exacerbated by Dr. Scheidt's conduct.   At worst, Dr. Scheidt's conduct was unprofessional, but it was not "akin to criminal recklessness."   Popoalii, 512 F.3d at 499.

Additionally, Dr. Scheidt is entitled to qualified immunity for his actions because, as Dr. Scheidt argued, there is no clearly recognized constitutional right to receive a brand-name drug as opposed to its generic version and disagreements over a course of treatment do not state a claim under the Eighth Amendment.   See Rowe, 198 F. App'x at 581 (no Eighth Amendment violation because inmate disagreed with physician's prescribing decisions); Jolly, 205 F.3d at 1096 ("mere disagreement with treatment decisions does not rise to the level of a constitutional violation"); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (prison doctors are free to exercise their independent medical judgment); Long, 86 F.3d at 765 ("Prisoners do not have a constitutional right to any particular type of treatment"); Smith, 910 F.2d at 502 (claims properly dismissed because they were based on "nothing more than mere disagreement with the course of his medical treatment."); Mace v Johnson, Civ. No. 11-0477

(MJD/LIB), 2014 WL 538580, at *11 (D. Minn. Feb. 11, 2014) ("Absent deliberate indifference, inmates do not have a right to receive a specific or desired course of treatment . . . [f]urthermore, disagreement with a doctor's medical treatment decisions is not enough to establish a deliberate indifference claim.") (internal citation omitted) (citing <u>Cooke v. Stanton</u>, Civ. No. 08-1175 (MJD/JJK), 2009 WL 424537, at *5-6 (D. Minn. Feb. 18, 2009)).  Therefore, even assuming that the Amended Complaint alleged that Dr. Scheidt substituted one drug for another (which it does not allege), his choice of medicine would have been a medical treatment decision that does not trigger an Eighth Amendment violation.

Similarly, there is no clearly recognized constitutional right to require that medical professionals appear before their patients without blood on their clothing.

Lastly, while Tate suggested in his surreply that Dr. Scheidt violated Tate's "leg[al] right amendments[ ]" including his right to professionalism and his right to clean and safe medical care, and "the right to receive safe & clean treatment and my legal human rights", (Pl.'s Surreply, pp. 1-2), Tate identified no constitutional right and the Court could discern no such constitutional right, much less a "clearly established constitutional right."

For all of these reasons, the Court finds that Dr. Scheidt is entitled to qualified immunity and Tate's suit against him should be dismissed on the merits.

As to Dr. Scheidt's motion to dismiss on failure to exhaust administrative remedies grounds, this argument is moot in light of the Court's determination that dismissal under Rule 12(b)(6) is appropriate.  At any rate, exhaustion of administrative remedies is an affirmative defense and Dr. Scheidt carries the burden of proving the

defense. Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2001); Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir. 2001).  Tate alleged that he exhausted his administrative remedies by sending in grievance forms to which prison officials failed to respond and attached pages of documents to his Complaint that bear on his efforts to grieve his complaints, including two pages directed to the Kanabec County Jail.  Complaint, p. 3; Amended Complaint, p. 3; Pl.'s Surreply, pp. 1-2; Docket No. 1-1, pp. 69, 74.  The Court cannot conclude based on this record that Dr. Scheidt is entitled to dismissal as a matter of law based on failure to exhaust administrative remedies.

The Court also declines to recommend dismissal on the basis that Tate failed to allege any harm to him as a consequence of Dr. Scheidt's conduct.  Def.'s Reply, p. 2-3. For starters, Dr. Scheidt did not raise this argument in his initial moving papers and therefore, this issue is not properly before the Court.  See, e.g., Helderman v. Ocwen Loan Servicing, LLC, No. 15-CV-3814 (PJS/JSM), 2016 WL 845305, at *2, n.3 (D. Minn. Mar. 2, 2016) ("But the Court need not address WGC's argument because it was made for the first time in a reply brief.") (citing Gearin v. City of Maplewood, 780 F. Supp. 2d 843, 866 n.23 (D. Minn. 2011); Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd., 491 F. Supp. 2d 871, 878 (D. Minn. 2007)); Black v. Independent Sch. Dist. No., 316, 476 F.Supp.2d 1115, 1121, n.6 (D. Minn. 2007) (stating that the court would not address an issue raised for the first time in a reply brief).  In any event, as Tate pointed out in his surreply, he did allege harm flowing from Dr. Scheidt's conduct in his Amended Complaint when he asserted bad side effects with his breathing as a consequence of consuming Naproxen and he sought damages in the amount of $100,000 for all of the

"pain and suffering" he was experiencing.  Pl.'s Surreply, p. 1; Amended Complaint, p. 5.

## III.   RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT** defendant Dr. William Scheidt's Motion to Dismiss [Docket No. 62] be granted and this suit against him be dismissed with prejudice.[8]

Dated: October 7, 2016                          *s/ Janie S. Mayeron*
                                                JANIE S. MAYERON
                                                United States Magistrate Judge

---

[8]      When a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. See McLean v. United States, 566 F.3d 391, 400 (4th Cir.2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir.2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir.1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10–4554 (JNE/SER), 2011 WL 2118797 at *5, n.6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), Report and Recommendation adopted by 2011 WL 2118791 at *3 (D. Minn. May 25, 2011).  The Court has concluded that Tate's claims against Dr. Scheidt should be dismissed with prejudice because the Court cannot imagine a set of circumstances under which Dr. Scheidt could be liable to Tate for his actions.  As previously noted, the Amended Complaint did not allege that Dr. Scheidt had anything to do with Tate receiving Naproxen rather than Aleve; even if Dr. Scheidt did prescribe Naproxen rather than Aleve, that conduct did not amount to a violation of the Eighth Amendment; and there is no cause of action against Dr. Scheidt under the Eighth Amendment for seeing Tate while he had blood on his clothes.  For these reasons, the Court recommends dismissal with prejudice.

**NOTICE**

**Filing Objections**:  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.   Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.   A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date**:  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.